MUSSELSHELL COUNTY, Respondent, v. PETROLEUM
COUNTY, Appellant.
(WIER, Intervenor Respondent)
No. 8574
Submitted June 7, 1945. Decided September 19, 1945.
161 Pac. (2d) 905

(1)

2

Mr. H. Leonard DeKalb, of Lewistown, and Mr. George D. Ore of Winnett, for appellant.

4

Mr. W. W. Mercer of Roundup, for respondent J. W. Wier.
Mr. A. G. McNaught and Mr. F. V. Watts, both of Roundup,
for the other respondents.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This proceeding originated as a declaratory judgment action brought by Musselshell County against Petroleum County to determine the possible liability as between them for the hospitalization of Robert Webb and Mertyn Erwin, two indigent non-residents of Montana who suffered serious injuries in a highway accident in defendant county and who for want of hospital facilities therein were taken for treatment to two hospitals in plaintiff county. After defendant's answer was filed the court ordered the hospitals brought in as parties. J. A. Wier, assignee of the claims of said hospitals, then filed a complaint in intervention setting up the claims, seeking a declaratory judgment fixing the liability of plaintiff and defendant therefor, and asking such other relief as the court might consider proper.

As the parties submitted the case upon an agreed statement of facts it is unnecessary to consider the allegations of the pleadings. The statement of facts sets forth that in an automobile accident in Petroleum county in August, 1942, the two men received various fractures, bruises, and other external and internal injuries, that each bled profusely after said accident, and had lain for an unknown length of time before being discovered; "that the injuries of both of said parties were of such a nature that it was necessary that they each receive immediate medical and surgical attention and hospitalization at the nearest hospital, and that prompt medical and surgical attention and hospitalization were necessary to save the life of each of said parties"; that the accident when discovered was reported to the coroner and to the sheriff's office of Musselshell county; that the coroner, Dr. S. A. Crouse, accompanied by a member of the sheriff's force and a state highway patrolman, went to the place of the accident, examined the injured men, and directed that each be taken to one of the two hospitals at Roundup, the ones nearest to the scene of the accident, there being no hospital facilities in Petroleum county; that immediately upon his return

to Roundup and prior to the hospitalization of the men the coroner telephoned a member of the board of county commissioners of Petroleum county "and notified him of the occurrence of the said accident and the injury of the said Robert Webb and Mertyn Erwin, and explained to the said county commissioner that the said parties were being hospitalized in Roundup, under the necessity of immediate hospitalization, by reason of the condition of the said injured parties"; that the men were hospitalized for the periods of time and at the expenses shown by the claims, which were duly presented to plaintiff and defendant counties: Namely, Webb, from August 20, 1942, to February 1, 1943, $482.50; and Erwin from August 20, 1942, to January 17, 1943, $473; that the claims were for "the reasonable and necessary expense of caring for said patients"; that the two injured men were non-residents and were both without means and unable to pay any part of the expense.

The court adopted the agreed statement of facts as its findings of fact and made conclusions of law to the effect that in case of serious injury to a human being, whether the latter is with or without means, it is the legal duty of any individual capable of so doing to see that the injured person is taken to the nearest and best hospital. The conclusions of law continue: "Therefore, whether Dr. S. A. Crouse was or was not a county health officer, or whether he did or did not have authority to obligate Musselshell county, is immaterial as a matter of law. He performed his duty under the law correctly as did also the state highway patrolman correctly perform his duty; it was proper for Dr. Crouse to notify Petroleum county as he did, of the accident, but it was not necessary in order to fix the legal responsibility for said hospitalization.

"It is not necessary, in case of a serious accident or a serious illness, to delay the necessary arrangement for the treatment of a patient until the Board of County Commissioners of any county can be contacted and until their consent is secured. Whether or not medical care and attention and hospitalization is immediately necessary to save human life is a question of fact

to be determined thereafter, and who is responsible for the payment of said medical care, attention and hospitalization can be determined, where a delay endangers life, after the patient has received the necessary attention, and the legal status with reference to who is responsible for the expense remains exactly the same, regardless of whether the consent was previously had or not, and can be subsequently determined. To hold otherwise * * * might mean that hours or days might elapse before a Board of County Commissioners could or would convene * * *, and then the necessary majority might not agree.

"That the claim, as filed by J. A. Weir, the plaintiff in intervention, is a proper and legal charge and claim against the County of Petroleum, State of Montana, a body politic and corporate and one of the defendants in intervention."

Accordingly judgment was rendered for plaintiff in intervention against defendant, Petroleum County, for $955.50 and costs of suit, and defendant has appealed.

Section 4530, Rev. Codes, which was expressly mentioned in the complaint in intervention and in the answers thereto, provides as follows:

"When any non-resident without means is sick within any county in this state, and not able to pay his board, nursing, or medical attendance, the board must, on application being made, give assistance to such person as is necessary, and if the person dies, the board must give him a decent burial, and make allowance for the expenses incurred and order the same to be paid out of the county treasury."

Appellant relies upon the case of Roane v. Hutchinson County, 40 S. D. 297, 167 N. W. 168, 169, decided upon a statute which defendant considers equivalent to our section 4530, but which provides: "It shall be the duty of the overseers of the poor, on complaint made to them that any person not an inhabitant of their county is lying sick therein or in distress, * * * to examine into the case of such person and grant such temporary relief as the nature of the same may require." Pol. Code S. D. sec. 2781, as amended by Laws 1915, c. 256. Another statute of

8

South Dakota made the county commissioners the "overseers of the poor." Pol. Code S. D. sec. 2761.

The South Dakota opinion recited that twenty-eight non-residents without financial means received injuries in the wreck of a freight train in Hutchinson county necessitating prompt medical and surgical attention, which was given them in Yankton County; that on the day of the accident one of the county commissioners of Hutchinson county was informed that the accident had occurred in that county and "that said county would be expected to pay the expenses and care of said injured persons." The Court said: "The respondent's right to recovery must stand or fall under the provisions of this section of the statute. The liability of the county to pay for services rendered in granting relief to such sick and distressed persons is dependent upon an examination and granting such relief by the overseers of the poor. * * * There is no showing that this notice was given at a time when said injured persons were in Hutchinson county, or that the overseers of that county failed to perform their duties of making examination and granting relief. * * * Also, it will be observed that the said injured persons were actually lying sick and in distress in Yankton county at the time respondent was called upon to care for them. * * *

"We are of the view that, when a poor person is found to be lying sick and in distress in any particular county, for the purposes of granting temporary relief to him under section 2781 of the statute it is wholly immaterial from whence such injured person came or in what other county he may have contracted his sickness, unless possibly it might be material to ascertain the county of his legal residence."

In other words, the South Dakota court followed literally the words of the statute which provided that the duties of the officers of any county were to investigate and give temporary relief to non-resident persons then actually lying sick or in distress in that county, and held that the duty was on the officers of only that county in which at the time of "complaint" or notice, such persons were then so lying. Our statute is some-

what different and the chief similarity seems to be that, before the officers are required to act, some notification must reach them by "complaint made," under the South Dakota act, or by "application being made," under the Montana statute. It may well be that such notification would have to be shown in a mandamus suit to compel the officers to perform their duties. It is another question whether the notification must be shown as a prerequisite to forcing the county to pay for necessary hospitalization.

It is possible that if applicable section 4530 should be given ▮ the same interpretation as the South Dakota statute, as it is somewhat similar in conferring the duty upon the officers to supply assistance only on application made while a non-resident without means "is sick" within the county. If so, the desperately injured men should have been left lying in the Petroleum county ditch until application was duly made to the board of that county; and in that event, since instead the officers followed the normal, humanitarian course, the statute may transfer the burden to Musselshell county. That interpretation would certainly, as in the South Dakota case, reward a county for the absence of hospital facilities and penalize a county for having them; it would also tend to discourage the proper humanitarian treatment of emergency cases. While nevertheless a legislative provision having that result must be given effect by the courts, such an interpretation should not be adopted if there is a reasonable alternative. However, that question need not here be determined, for we have a later statute which is applicable.

Section VI of Part II of Chapter 82, Laws of 1937, provides in part: "Medical aid and services and hospitalization for persons unable to provide such necessities for themselves are hereby declared to be the legal and financial duty and responsibility of the board of county commissioners, payable from the county poor fund."

Section II(d) of Part II of that Act provides: "Inter-state transients, without legal Montana residence, shall not be eligible

for continued assistance from state funds but may, if in distress, receive temporary relief from either state or county funds until such time as such transients may be returned to their state of legal residence or state or [of] origin.''

These two sections, taken together, must mean that necessary ▮ hospitalization must be given such indigent transients, but only until their condition is such that removal to their home states is feasible.

That 1937 enactment places the absolute duty upon the board ▮ of county commissioners and the burden upon the county poor fund without requiring application or notice as a prerequisite to the imposition of the burden. To that extent the · enactment must be held to supersede the provisions of section 4530. Consequently it is not a notice given or application made while a person ''is sick within'' the county or at any other time which initiates each county's liability, but the incidence of the need. There is nothing in the 1937 statute to suggest that the county's burden, once accrued, is terminated by the removal of the patient to another county for treatment or otherwise, or is thereby transferred to the latter county.

It would seem that in these days of rapid transportation on a state highway system over the construction and maintenance of which the counties have no authority, such burden arising from a traffic accident might well be placed upon the state as a whole rather than upon the county in which the accident happens to occur; but that is a matter over which the legislative assembly has full control,`and there can be no doubt of its authority to decide the matter of state policy as it has done.

There is no evidence in the record concerning the state of ▮ legal residence or origin of either of the men involved, nor concerning the question whether, and if so when, during the period shown on the claims, either of such transients might practicably have been returned to his state of legal residence or origin. Consequently the evidence does not sustain the judgment in full. Since by court order and the claimant's intervention, the action has been converted from a purely declaratory

action to one for full adjudication of the claim, the judgment must be vacated and the cause remanded for further proceedings in accordance herewith.

Accordingly it is so ordered.

Associate Justices Adair, Angstman, and Cheadle concur.

Mr. Justice Morris (dissenting).

I dissent. The parties agreed that the claims for the medical care and hospitalization of the injured persons were "reasonable and necessary expense of caring for said patients." This was a stipulation of fact by which this court is bound. Read v. Lewis and Clark County, 55 Mont. 412, 178 Pac. 177. Such being the situation, the only question to be determined by this court was as to which of the two counties was liable for the claims—purely a question of law—and remanding the cause for further proceedings is not only useless but absurd.